T.C. Memo. 2004-160

UNITED STATES TAX COURT

MARK W. SENDA AND MICHELE SENDA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17298-02.                    Filed July 12, 2004.

<u>Daniel V. Conlisk</u>, <u>James R. Dankenbring</u>, and <u>James Robert Loranger</u>, for petitioners.

<u>Thomas C. Pliske</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of $185,572, $276,321, and $25,674 in petitioners' Federal gift taxes for 1998, 1999, and 2000, respectively.

After concessions by respondent, the issue for decision is whether petitioners' transfers of stock to two family limited

partnerships, coupled with petitioners' transfers of limited partnership interests to their children (or in trust therefor), constitute indirect gifts of the stock to the children (or to the trusts) within the meaning of section 2511.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Lake St. Louis, Missouri, at the time that they filed their petition in this case.

### General Background

Petitioners have three minor children, Mark R. Senda, Janell N. Senda, and Ross J. Senda (collectively, the children).

On May 29, 1996, Mark W. Senda (petitioner) attended a seminar in Chicago, Illinois, on tax planning regarding the tax benefits of forming a family limited partnership (FLP). The seminar, Executive Tax/Financial Planning Seminar, was sponsored by Arthur Andersen, LLP, and Fraser Stryker Meusey Olson Boyer & Bloch, P.C., an Omaha, Nebraska, law firm. On December 30, 1996, petitioners formed, but did not fund, an FLP under Illinois law.

At the end of 1996 or beginning of 1997 and in 1998, petitioner received approximately $5-6 million worth of MCI WorldCom stock (stock) after MCI WorldCom acquired two companies where petitioner was successively employed.

The Mark W. Senda Family Limited Partnership

Sometime in 1998, petitioner met with James R. Dankenbring (Dankenbring), his attorney, to discuss in more detail the advantages of forming an FLP as a vehicle to hold investment assets and to serve as a means of making gifts. On or about April 1, 1998, petitioners signed the Mark W. Senda Family Limited Partnership Agreement (SFLP I Agreement). On June 3, 1998, the secretary of state of Missouri issued a certificate of limited partnership for the Mark W. Senda Family Limited Partnership (SFLP I). The partnership interests, as set forth in the SFLP I Agreement, were initially held as follows:

| Partner | Percentage | Interest |
|---|---|---|
| Mark W. Senda, Trustee, or his successors in trust, under the Mark W. Senda Revocable Trust dated Nov. 20, 1996, and any amendments thereto | 10.0 | General |
| Mark W. Senda, Trustee, or his successors in trust, under the Mark W. Senda Revocable Trust dated Nov. 20, 1996, as amended thereto | 89.8397 | Limited |
| Michele Senda | 0.1303 | Limited |
| Mark W. Senda, as trustee for Mark R. Senda | 0.010 | Limited |
| Mark W. Senda, as trustee for Ross J. Senda | 0.010 | Limited |
| Mark W. Senda, as trustee for Janell N. Senda | 0.010 | Limited |

Although the children's partnership interests were purportedly held for them in trust, there was no written trust agreement at the time of the transfers reflecting that the children were beneficiaries of any trust for which petitioner was the trustee. The children, as limited partners, reported income/losses from SFLP I on their individual tax returns. Trusts for the benefit of the children and of which petitioner was trustee have never filed tax returns.

On December 28, 1998, petitioners contributed to SFLP I 28,500 shares of stock in exchange for their partnership interests. Petitioners transferred the stock from their joint brokerage account to the brokerage account of SFLP I. Both accounts were held at Salomon Smith Barney. The children (or

trusts therefor) purportedly contributed oral accounts receivable in exchange for their partnership interests. The accounts receivable, however, were never reduced to writing, had no terms for repayment, and had not been paid as of the time of trial.

By fax dated December 28, 1998, petitioners informed their accountant that they had transferred stock to SFLP I and sought advice as to what percentage of partnership interests they should transfer to the children. On that same day, petitioner gave to each child (or trust therefor) a 29.94657-percent limited partnership interest in SFLP I. Michele Senda (Senda) gave to each child (or trust therefor) a 0.0434-percent limited partnership interest in SFLP I. The certificates of ownership reflecting these transfers were not prepared and signed until several years thereafter.

The SFLP I Agreement provides that the general partner shall prepare or have prepared annual financial statements. It further provides that, not less than annually, all partners shall meet to discuss the financial condition of the partnership. SFLP I has never had annual financial statements prepared or held partnership meetings. The only books and records maintained by petitioner, as general partner, were brokerage account statements and partnership tax returns. The 1998 Form 1065, U.S. Partnership Return of Income, for SFLP I was signed by the tax return preparer on October 8, 1999.

Senda & Associates, L.P.

Sometime in 1999, Dankenbring advised petitioner that, if petitioner wished to transfer additional property in partnership form to the children, he should form a second FLP instead of recapitalizing SFLP I.

On December 2, 1999, the secretary of state of Missouri issued a certificate of limited partnership for Senda & Associates, L.P. (SFLP II).  On December 4, 1999, Robert Brendell signed, as trustee, the irrevocable trusts (trusts) for the benefit of each child.  Petitioner and Senda, however, did not sign the trusts as "trustmakers" until May 1 and 11, 2000, respectively.  Although the trusts also list Citicorp Trust South Dakota (Citicorp) as trustee, a representative of Citicorp never signed the trusts.

On December 17, 1999, petitioners signed the SFLP II Partnership Agreement (SFLP II Agreement).  The partnership interests, as set forth in the SFLP II Agreement, were initially held as follows:

| Partner | Percentage | Interest |
|---|---|---|
| Mark W. Senda, Trustee, or his successors in trust, under the Mark W. Senda Revocable Trust dated Feb. 23, 1998, and any amendments thereto | 1.0 | General |
| Mark W. Senda, Trustee, or his successors in trust, under the Mark W. Senda Revocable Trust dated Feb. 23, 1998, and any amendments thereto | 97.97 | Limited |
| Michele Senda | 1.0 | Limited |
| Citicorp Trust South Dakota and Robert Brendell, Trustees of the Mark R. Senda Irrevocable Trust | 0.01 | Limited |
| Citicorp Trust South Dakota and Robert Brendell, Trustees of the Ross J. Senda Irrevocable Trust | 0.01 | Limited |
| Citicorp Trust South Dakota and Robert Brendell, Trustees of the Janell N. Senda Irrevocable Trust | 0.01 | Limited |

On December 20, 1999, petitioners contributed to SFLP II 18,477 shares of stock in exchange for their partnership interests. Petitioners transferred the stock from their joint brokerage account to the brokerage account of SFLP II. Both accounts were held at Salomon Smith Barney. Trusts for the children purportedly contributed oral accounts receivable in exchange for their partnership interests. The accounts receivable, however, were never reduced to writing, had no terms for repayment, and had not been paid as of the time of trial. On that same day, petitioner gave to each child, in trust, a 17.9-percent limited partnership interest in SFLP II. The

certificates of ownership reflecting these transfers were not prepared and signed until several weeks after the transfers.

By fax dated December 22, 1999, petitioners informed their accountant that they had transferred stock to SFLP II and sought advice as to the percentage of partnership interests they should transfer to the children to maximize their annual gift tax exclusions and use all of their remaining unified credits.

On January 31, 2000, petitioner gave to each child, in trust, an additional 4.5-percent limited partnership interest in SFLP II.

The SFLP II Agreement provides that petitioner, as general partner, shall keep the financial statements of the partnership for the most recent 3 fiscal years. SFLP II has never had annual financial statements prepared. The only books and records maintained by petitioner, as general partner, were brokerage account statements and partnership tax returns. The 1999 Form 1065 for SFLP II was signed by the tax return preparer on August 30, 2000.

Petitioner paid all legal fees and filing costs with respect to SFLP I and SFLP II. The partnerships did not reimburse those costs to petitioner, nor were those costs a liability of the partnerships.

Gift Tax Returns and the Notice of Deficiency

Petitioners filed Forms 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 1998, 1999, and 2000. On those returns, petitioners reported split gifts of $462,379, $183,792, and $14,307.71 for 1998, 1999, and 2000, respectively. Those amounts reflect the discounted values of the partnership interests transferred to the children, which were calculated by multiplying, for each year in issue, the value of the property petitioners contributed to the partnerships, as reported on the Forms 709, by the percentage of the partnership interests transferred to the children. Petitioners then applied lack of marketability and minority interest discounts and subtracted the annual exclusion amount for each child.

In the notice of deficiency, respondent determined that the fair market value of the property transferred to the children was $1,798,647, $791,826, and $164,103 for 1998, 1999, and 2000, respectively. Those amounts reflect the value of the property that petitioners contributed to the partnerships without lack of marketability and minority interest discounts.

Valuation Discounts

The parties stipulate that, if we conclude (1) that the partnership interests, rather than the underlying assets, should be valued for gift tax purposes and (2) that discounts should be

applied to the net asset value of the partnership assets, the
following discounts should apply:

| Partnership | Date of Transfer | Minority Discount | Marketability Discount | Combined Discount |
|---|---|---|---|---|
| SFLP I | 12/28/98 | 5.88% | 35% | 38.82% |
| SFLP II | 12/20/99 | 15.44 | 35 | 45.0 |
| SFLP II | 1/31/00 | 17.12 | 35 | 46.13 |

There is no dispute as to the value of the stock without any
discount.

                              OPINION

Section 2501 imposes a tax on the transfer of property by
gift during the taxable year.  This tax is imposed whether the
transfer is in trust or otherwise and whether the gift is direct
or indirect.  See sec. 2511.  A gift of property is valued as of
the date of the transfer.  See sec. 2512(a).  The gift is
measured by the value of the property passing from the donor,
rather than by the value of the property received by the donee or
upon measure of enrichment to the donee.  See sec. 25.2511-2(a),
Gift Tax Regs.

The fair market value of the transferred property is the
"price at which property would change hands between a willing
buyer and a willing seller, neither being under any compulsion to
buy or to sell, and both having reasonable knowledge of relevant
facts."  Sec. 25.2512-1, Gift Tax Regs.  Where property is
transferred for less than adequate and full consideration in

money or money's worth, the amount of the gift is the amount by which the value of the property transferred exceeds the value of the property received. See sec. 2512(b).

Petitioners contend that they made gifts of limited partnership interests and that the partnerships have economic substance and are valid under Missouri law. Thus, they argue that the partnerships may not be disregarded for Federal tax purposes and that the stipulated discounts apply in determining the value of the gifts. Petitioners further contend that, because they did not shift economic value to the children when they contributed the stock to the partnerships, they did not make gifts on formation of the partnerships.

Respondent does not dispute that the partnerships are valid under Missouri law or that the partnerships have economic substance. Respondent contends, however, that petitioners' transfers of the stock to the partnerships, coupled with the transfer of limited partnership interests to the children, were indirect gifts of the stock to the children. Accordingly, respondent argues that the stock, and not the partnership interests, should be valued for gift tax purposes. Respondent argues that "the transitory allocations to petitioners' capital accounts, if such allocations even occurred at all, were merely steps in integrated transactions intended to pass the stock to the petitioners' children in partnership form."

We need not discuss the burden of proof.  We decide this case on the preponderance of the evidence.  Whether the children's interests were held in valid trusts or not is not material to our decision.

Section 25.2511-1(h)(1), Gift Tax Regs., provides that a transfer of property by a taxpayer to a corporation represents a gift by the taxpayer to the other shareholders of the corporation to the extent of their proportionate interests in the corporation.  In Shepherd v. Commissioner, 115 T.C. 376, 389 (2000), affd. 283 F.3d 1258 (11th Cir. 2002), we applied the principle that, like a transfer of property to a corporation, a transfer of property to a partnership for less than full and adequate consideration may represent a gift to the other partners.

In Shepherd, the taxpayer transferred real property and stock to a newly formed family partnership in which he was a 50-percent owner and his two sons were each 25-percent owners. Id. at 380-381.  Rather than allocating contributions to the capital account of the contributing partner, the partnership agreement provided that any contributions would be allocated pro rata to the capital accounts of each partner according to ownership.  Id. at 380.  Because the contributions were reflected partially in the capital accounts of the noncontributing partners, the value of the noncontributing partners' interests

was enhanced by the contributions of the taxpayer.  Accordingly, we held that the transfers to the partnership were indirect gifts by the taxpayer to his sons of undivided 25-percent interests in the real property and stock.  Id. at 389.  The Court of Appeals for the Eleventh Circuit affirmed our decision for the reasons stated in our Opinion.

Petitioners' transfers of stock in the instant case are similar to the transfer of property in Shepherd.  In both cases, the value of the children's partnership interests was enhanced by their parents' contributions to the partnerships.  Petitioners attempt to distinguish Shepherd by referring to our statement in that case that "not every capital contribution to a partnership results in a gift to the other partners, particularly where the contributing partner's capital account is increased by the amount of his contribution".  Id. at 389.  Petitioners argue that, in the instant case, petitioners' capital accounts were increased by the amount of their contributions.  Petitioners further argue that, under Estate of Jones v. Commissioner, 116 T.C. 121 (2001), it is irrelevant that the contributions of the stock to the partnerships and the transfers of the partnership interests to the children occurred on the same day.

In Estate of Jones, the taxpayer contributed property to the partnerships and received continuing limited partnership interests in return.  All of the contributions of property were

properly reflected in the capital accounts of the taxpayer.  <u>Id.</u>
at 128.  In the instant case, however, it is unclear whether
petitioners' contributions of stock were ever reflected in their
capital accounts.  On cross-examination, petitioner testified
with respect to SFLP I as follows:

> Q  And, at that same time, certainly the same day,
> you transferred the partnership interests, limited
> partnership interests from yourself and Michele to the
> children, correct?
>
> A  Yes, sir.
>
> Q  And when did you do that?  On December 28?
>
>     \*    \*    \*    \*    \*    \*    \*
>
> A  Well, keep in mind that these things have been
> weeks in the making.  So the fact that they triggered
> at a particular day or on a particular day may or may
> not be relevant.
>
> The fact that that happened during that day, I
> couldn't tell you if it happened at 1:00, 3:00 or 5:00.
> If that's what you're asking me.
>
> Q  That was what I was asking you.  The transfer
> of the limited partnership interests, how did that
> occur on December 28, 1998?
>
> A  How did that occur?  Tell me where you're
> going.  I'm not sure.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> Q  So how did you transfer it from yourself to the
> children?
>
> A  How did I transfer?  I'm not certain what the
> right, what you're looking for here.

It is apparent from petitioner's evasive testimony and from the total record that petitioners were more concerned with ensuring that the beneficial ownership of the stock was transferred to the children in tax-advantaged form than they were with the formalities of FLPs. Indeed, petitioner, as general partner, did not maintain any books or records for the partnerships other than brokerage account statements and partnership tax returns. Those tax returns were prepared months after the transfers of the partnership interests. Thus, they are unreliable in deciding whether petitioners transferred the partnership interests to the children before or after they contributed the stock to the partnerships. The same is true of the certificates of ownership reflecting the transfers of the partnership interests, which were not prepared until at least several weeks after the transfers. The informality is not surprising, inasmuch as petitioners alone, individually, or on behalf of their minor children were united in purpose and acted without restraint by any adverse interest. As a result, however, petitioners have presented no reliable evidence that they contributed the stock to the partnerships before they transferred the partnership interests to the children. At best, the transactions were integrated (as asserted by respondent) and, in effect, simultaneous.

Petitioners argue that there is sufficient evidence showing that they first funded the partnerships and then transferred the partnership interests to the children and direct our attention to the letters that they faxed to their accountant after they had funded the partnerships. Those faxes, however, establish only that petitioners had funded the partnerships. They do not show what the partnership ownership interests were immediately before the funding or how the stock was allocated among the partners' capital accounts at the time of the funding. Moreover, the fax seeking advice with respect to the SFLP II partnership interests was dated 2 days after petitioners had allegedly transferred the partnership interests to the children.

On this record, we conclude that the value of the children's partnership interests was enhanced upon petitioners' contributions of stock to the partnerships. Accordingly, we hold that petitioners' transfers of stock to SFLP I and SFLP II on December 28, 1998, and December 20, 1999, respectively, were indirect gifts of the stock to the children for purposes of sections 2501 and 2511. Respondent has conceded that the January 31, 2000, gifts were gifts of partnership interests and not gifts of stock. The gift tax thus shall be determined on the value of the stock rather than on the value of the partnership interests transferred.

We have considered the other arguments of the parties, and they are either without merit or need not be addressed in view of our resolution of the issue.

To reflect the foregoing and respondent's concessions,

<u>Decision will be entered under Rule 155</u>.